## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**HAROLD BONNEY**                                    **CIVIL ACTION**

**VERSUS**                                           **NO.  18-7978**

**ROBERT TANNER, CCE, WARDEN**                       **SECTION "H"(4)**

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**.  Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  *See* 28 U.S.C. § 2254(e)(2) (2006).[1]

## I.     Factual Background

The petitioner, Harold Bonney ("Bonney"), is a convicted inmate incarcerated in the Rayburn Correctional Center, in Angie, Louisiana.[2]  On April 23, 2010, Bonney and co-defendant John Picard were charged in Orleans Parish with two counts each of armed robbery with a firearm in violation of La. Rev. Stat. § 14:64.3 (counts one and two) and two counts of attempted armed robbery with a firearm in violation of La. Rev. Stat. § 14:27(64.3) (counts three and four).[3]  Bonney and Picard originally both entered pleas of not guilty in the case.[4]

---

[1]Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows that either the 14:64.3claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2]Rec. Doc. No. 4.

[3]St. Rec. Vol. 1 of 4, Bill of Information, 4/23/10.

[4]St. Rec. Vol. 1 of 4, Minute Entry, 5/6/10.

The record reflects that,[5] on November 14, 2009, at approximately 5:00 p.m, four male Hispanic workers, Elvis Hernan Flores, Milton Ormando Rumirez, Jose Ramon Obando–Brizuela, and Carlos Enrique Perez–Rodriguez, who first identified himself to the police as Ernesto Sorlano, had finished working on a house they had been renovating on North Miro Street in Orleans Parish and were sitting outside waiting for their ride. At least two of the workers saw Bonney and Picard exit a white vehicle. Bonney pulled out a gun and demanded money from the workers. Flores and Perez–Rodriguez handed over some money. During the robbery, Bonney fired his weapon at Flores, but the gun jammed. The weapon then discharged, and Perez–Rodriguez was shot in the foot. Bonney fled in the white car while Picard fled on foot after picking up the shell casing.

Harold Flores, who arrived to pick up the workers, called 911. Police officers from the New Orleans Police Department responded. Initially, only Perez–Rodriguez spoke to the police officers. Harold Flores assisted in translating Perez-Rodriguez's descriptions of the perpetrators. According to the descriptions, the perpetrator with the gun was tall, had long dreadlocks, and was wearing a white shirt and black pants. The second perpetrator was shorter, had medium-length dreadlocks, and was dressed in all black.

At trial, Officer Joshua Carwile of the First District testified that he heard the dispatch regarding the shooting as well as the subsequent dispatch in which the descriptions were broadcast. Based on a hunch, he drove to a bus stop a few blocks from the scene of the crimes. Once at the bus stop, Carwile observed a man who fit the description of the shorter of the two suspects, Picard. He took Picard into custody and drove him back to the North Miro Street house where Perez–

---

[5]The facts were taken from the published opinion of the Louisiana Fourth Circuit Court of Appeal on direct appeal. *State v. Bonney*, No. 2012-KA-0175, 2012 WL 559860, at *1-3 (La. 4th Cir. Nov. 14, 2012); St. Rec. Vol. 3 of 4, 4th Cir. Opinion, 2012-KA-0175, 11/14/12.

Rodriguez was waiting for the E.M.S. unit to arrive.  According to Carwile, Perez–Rodriguez identified Picard as the perpetrator who did not have the gun.

Detective Aaron Wiltz interviewed Perez–Rodriguez at the hospital, with Harold Flores translating.  Wiltz testified that he developed Harold Bonney as a potential suspect.  Wilz compiled a six-pack photographic lineup and presented it to Perez–Rodriguez.  Perez-Rodriguez identified Bonney as the perpetrator who had robbed and shot him.  Officer Brett Mathes arrested Bonney pursuant an arrest warrant obtained by Wiltz.

Approximately two months after the incident, Monica Munoz, formerly an investigator with the Orleans Parish District Attorney's Office who speaks Spanish fluently, interviewed Perez–Rodriguez.  Assistant District Attorney Autumn Cheramie accompanied Munoz.  According to Munoz, it was during that interview that the State first learned that there were three other victims, Flores, Rumirez and Obando-Brizuela.  Munoz interviewed each of them as well.  Each of the three other victims testified at trial through an interpreter and their testimony was consistent with the account of the robberies that Perez-Rodriguez gave to Wiltz.  These accounts included that Picard stopped and picked up the shell casing after the gun discharged.

At trial, Flores, Rumirez and Obando-Brizuela each identified Bonney in court as the taller man who held the gun on them.  Each of their descriptions of the robbers were consistent with the description given by Perez–Rodriguez.  Several witnesses testified that Bonney's hair was no longer in long dreadlocks as it had been at the time of the robbery.  Flores was the only victim who testified he gave the robbers money.  Flores recounted that Bonney pointed a gun at him and attempted firing it, but the gun jammed.

The three victims testified that they did not speak to any police officers on the scene due to their fear of the police, and their concern for Perez–Rodriguez.  Rumirez testified that Perez–Rodriguez returned to his native El Salvador because he was very scared after the robbery.

A recording of the 911 call was played for the jury.  The telephone supervisor and custodian of inmate phone call records at the Orleans Parish Prison, Don Hancock, identified several phone calls placed by Picard and Bonney and the calls were played for the jury.

The defense presented no witnesses or evidence at trial.

Jury selection for both Bonney and Picard commenced on March 14, 2011.[6]  On March 15, 2011, the Trial Court denied a motion to sever offenses as to both defendants.[7]  Co-defendant Picard withdrew his former not guilty pleas and pled guilty to all four counts.[8]  Bonney was tried by a jury on March 15, 2011, and was found guilty of armed robbery with a firearm as charged in count two and attempted armed robbery in violation of La. Rev. Stat. § 14:27(64) as to counts three and four.[9]

The Trial Court denied Bonney's motions for new trial and post-verdict judgment of acquittal.[10]  On April 18, 2011, the Trial Court sentenced Bonney to 35 years as to count two, 25 years as to count three, and 25 years as to count 4, each sentence to be served at hard labor and concurrently .[11]  On that same date, the State filed a multiple bill.[12]  On September 15, 2011, the

---

[6]St. Rec. Vol. 1 of 4, Trial Minutes, 3/14/11.  Solano, a/k/a Carlos Perez–Rodriguez, was named as the victim in count one of the bill of information.  At the time of trial, he had returned to his native El Salvador, and therefore, trial as to that count was severed.

[7]St. Rec. Vol. 1 of 4, Motion Pursuant to La. C. Cr. P. Art. 704 for Separate Trials of Defendants, 3/14/11; Trial Court Order, 3/14/11; Minute Entry, 3/15/11; St. Rec. Vol. 3 of 4, Trial Transcript, pp. 71-72, 3/14/11.

[8]St. Rec. Vol. 1 of 4, Minute Entry, 3/15/11; St. Rec. Vol. 3 of 4, Trial Transcript, p. 74, 3-14-15/11.

[9]St. Rec. Vol. 1 of 4, Trial Minutes, 3/15/11; Verdicts, 3/15/11; St. Rec. Vol. 3 of 4, Trial Transcript, 3/14-15/11.  The verdict forms as to counts three and four erroneously referenced La. Rev. Stat. § 14:27(64) for attempted armed robbery instead of § 14:27(64.3) for attempted armed robbery with a firearm.  State. Rec. Vol. 1 of 4, Verdicts, 3/5/11.

[10]St. Rec. Vol. 1 of 4 Sentencing Minutes, 4/18/11; St. Rec. Vol. 3 of 4, Sentencing Transcript, 4/18/11 (misdated 9/9/11); St. Rec. Vol. 1 of 4, Motion for New Trial, 4/18/11; Order, 4/18/11;  Motion for Post-Verdict Judgment of Acquittal, 4/18/11; Order, 4/18/11.

[11]St. Rec. Vol. 1 of 4, Sentencing Minutes, 4/18/11; St. Rec. Vol. 2 of 4, Sentence of the Court, 4/18/11; St. Rec. Vol. 3 of 4, Sentencing Transcript, 4/8/11.

[12]St. Rec. Vo. 2 of 4, Multiple Bill, 4/18/11.

Trial Court adjudicated Bonney as a second felony offender and vacated the original sentences and resentenced him to fifty years imprisonment at hard labor as to each counts two, three and four to run concurrent.[13]

On November 14, 2011, Bonney entered a guilty plea as to count one charging armed robbery with a firearm. The Trial Court sentenced Bonney to thirty-five (35) years at hard labor to be served concurrently with all other sentences.[14]

On direct appeal, Bonney's appellate counsel filed a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967), finding no non-frivolous issues to raise on appeal, and a motion to withdraw from the case, but requested a review of the record for errors patent.[15]  Bonney was given until July 21, 2012, to file a pro se brief, but the record does not reflect that the Fourth Circuit ever received one.[16]  The Louisiana Fourth Circuit affirmed the convictions finding that the State provided sufficient evidence to prove beyond a reasonable doubt that Bonney was guilty of armed robbery with a firearm and two counts of attempted armed robbery, and while the record revealed patent errors, none of them required reversal of the conviction.[17]  The Court, however, found that

---

[13]St Rec. Vol. 1 of 4, Sentencing Minutes, 9/15/11; St. Rec. Vol. 2 of 4, Sentence of the Court, 9/15/11; St. Rec. Vol. 3 of 4, Multiple Bill Hearing & Sentencing Transcript, 9/15/11.

[14]St. Rec. Vol. 1 of 4, Felony Waiver of Constitutional Rights Plea of Guilty Form, 11/14/11; Sentencing Minutes, 11/14/11; St. Rec. Vol. 2 of 4, Sentence of the Court, 11/14/11.

[15]St. Rec. Vol. 1 of 4, Motion to Withdraw & *Anders* Brief, 2012-KA-0175, 3/5/12; St. Rec. Vol. 4 of 4, Motion to Withdraw, 2012-KA-0175, 5/12/12.

[16]St. Rec. Vol. 3 of 4, 4th Cir. Order, 2012-KA-0175, 6/21/12; Letter, 6/4/12; 4th Cir. Order, 2012-KA-0175, 4/16/12; Letter, 3/16/12.  Bonney complained in his related writ application to the Louisiana Supreme Court that he had in fact filed a supplemental brief with the Fourth Circuit.  St. Rec. Vol. 4 of 4, La. S. Ct. Application for Writ, 13 KH 1982, p. 3, 8/14/13.  He submitted a copy of the supplemental brief to the Louisiana Supreme Court on September 4, 2013.  St. Rec. Vol. 4 of 4, Letter with Appendix including Supplemental Brief, 2012-KA-0175(dated 11/15/12), 9/4/13.  Notably, the untimely supplemental brief did not include a Fourth Circuit file stamp and was signed after the Louisiana Fourth Circuit rendered its opinion.

[17]*State v. Bonney*, 103 So. 3d 746 (La. App. 4th Cir. 2012)(Table), 2012 WL 5597860 (La. App. 4th Cir.

the Trial Court imposed an illegally lenient sentence as to count two as it failed to impose a mandatory additional five years imprisonment pursuant to La. Rev. Stat. § 14:64.3(A), the minute entries and commitment form incorrectly reflected that Bonney had been convicted of violating La. Rev. Stat. § 14:27(64.3) as to counts three and four rather than La. Rev. Stat. §14:27(64), and the record was unclear whether the adjudication and sentence of Bonney as a multiple offender was limited to count two.[18]  The Court therefore vacated the sentence imposed and remanded the matter for correction of the record, to designate the conviction for which the sentence was enhanced in the multiple offender sentencing, and if it was to count two, impose a legal sentence to include an additional five years to run consecutively, and to impose sentences for counts two, three and four to include the prohibition of probation, parole and suspension of sentence if the multiple offender sentence was as to count two.[19]  On February 27, 2013, the Trial Court "filed the sentencing paperwork as per the Fourth Circuit Court of Appeals Ruling."[20]

On April 11, 2014, the Louisiana Supreme Court denied Bonney's related writ application without stated reasons.[21]  His conviction was final under federal law ninety (90) days later, on July 10, 2014, when he did not file a writ application with the United States Supreme Court.  *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States

---

Nov. 14, 2012); St. Rec. Vol. 3 of 4, 4th Cir. Opinion, 2012-KA-0175, 3/5/12.

[18] *State v. Bonney*, 103 So. 3d 746 (La. App. 4th Cir.  2012)(Table), 2012 WL 5597860 (La. App. 4th Cir. Nov. 14, 2012); St. Rec. Vol. 3 of 4, 4th Cir. Opinion, 2012-KA-0175, 3/5/12.

[19]*State v. Bonney*, 103 So. 3d 746 (La. App. 4th Cir.  2012)(Table), 2012 WL 5597860 (La. App. 4th Cir. Nov. 14, 2012); St. Rec. Vol. 3 of 4, 4th Cir. Opinion, 2012-KA-0175, 3/5/12.

[20]St. Rec. Vol. 1 of 4, Minute Entry, 2/27/13.

[21]*State ex rel. Bonney v. State*, 137 So.3d 1208 (La. 2014) (mem.); St. Rec. Vol. 4 of 4, La. S. Ct. Order, 2013-K-0561, 11/1/13); La. S. Ct. Application for Writ, 13 KH 1982, 8/14/13.

Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)); U.S. Sup. Ct. Rule 13(1).

On January 27, 2015, Bonney submitted *pro se* to the Trial Court an application for post-conviction relief and brief in which he raised the following claims for relief:[22]  (1) insufficient evidence supported his convictions for armed robbery and attempted armed robbery; (2) the Trial Court erred in allowing the interpreter to act as a bailiff and call the witnesses to the stand; (3) he was denied his right to confrontation because he was not allowed to question the informer who identified him as "Red."  The Trial Court denied the application on December 17, 2015, finding Bonney's insufficient evidence claim was previously addressed on direct appeal and his other claims were without merit.[23]  Bonney filed a second application for post-conviction relief on July 19, 2016.[24]  The Trial Court found the application to be successive and denied it on August 3, 2016.[25]

On November 9, 2016, Bonney filed a writ application with the Louisiana Fourth Circuit in which he claimed that he had not sought to file a successive application for post-conviction relief, but rather was seeking an out-of-time appeal.[26]  On December 7, 2016, the Louisiana Fourth Circuit granted the application for supervisory review, but found that the Trial Court correctly refused to grant any relief on the insufficient evidence claim, citing La. Code Crim P. art. 930.4A,

---

[22] St. Rec. Vol. 1 of 4, Application for Post-Conviction Relief, 1/27/15.

[23] St. Rec. Vol 1 of 4, Trial Court Judgment, 12/17/15.

[24] St. Rec. Vol. 1 of 4, Uniform Application for Post-Conviction Relief, 7/19/16 (received 8/2/16).

[25] St. Rec. Vol. 1 of 4, Trial Court Judgment, 8/3/16.

[26] St. Rec. Vol. 4 of 4, 4th Cir. Writ Application, 2012-KA-0175-11/9/16.

and he failed to describe with specificity how the interpreter's actions had any detriment to him, and therefore found no legal error.[27]  The Louisiana Supreme Court denied Bonney's related writ application, finding he failed to satisfy his post-conviction burden of proof and his insufficient evidence claim was repetitive.[28]

## II.    Federal Habeas Petition

On September 7, 2018, the clerk of this Court filed Bonney's petition for federal habeas corpus relief in which he asserts the following grounds for relief[29]: (1) insufficient evidence; (2) the Trial Court erred by allowing the interpreter to retrieve witnesses and call them to the stand during trial; (3) his right to confrontation was violated because he was not allowed to question the informer who told police Bonney utilized the nickname "Red;" (4) ineffective assistance of trial and appellate counsel in failing to investigate his alibi and determine what happened to the missing portions of the surveillance video.[30]

The State filed a response in opposition to the petition asserting that Bonney timely filed his federal petition.[31]  The State asserts that Bonney's confrontation and ineffective assistance of counsel claims are not exhausted and are technically procedurally defaulted, the insufficiency of evidence claim is meritless and the interpreter claim is not cognizable on federal habeas review because it fails to allege a violation of clearly established federal constitutional law.

## III.    General Standards of Review

---

[27]St. Rec. Vol. 4 of 4, 4th Cir. Order, 2016-K-1206, 12/7/16.

[28]*State ex rel. Bonney v. State*, 242 So.3d 563 (La. 2018) (per curiam); St. Rec. Vol. 4 of 4, La. S Ct. Order, 17-KH-0192, 4/27/18.

[29]Rec. Doc. No. 4, pp. 4-8, 12-21.

[30]Bonney does not brief or even refer to this issue in his supporting memorandum of law.  Rec. Doc. 4, pp. 12-22.

[31]Rec. Doc. No. 16.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[32] applies to this petition, which is deemed filed in this Court under the federal mailbox rule on August 17, 2018.[33]  The threshold questions on habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and the claims must not be in "procedural default." *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State concedes Bonney timely filed his federal petition.  The State contends that Bonney failed to exhaust his claims of right to confrontation (claim three) and ineffective assistance of counsel (claim four).  The State asserts that Bonney's remaining claims can be dismissed as meritless or not cognizable on federal habeas review.[34]

## IV.    **Exhaustion Doctrine**

"A fundamental prerequisite to federal habeas relief under § 2254 is the exhaustion of all claims in state court prior to requesting federal collateral relief." *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973); *Whitehead v. Johnson*, 157 F.3d 384, 387 (5th Cir.1998) (citing *Rose v. Lundy*,

---

[32]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996.  *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)).  The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[33]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se.  Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes.  *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995).  The clerk of court filed Bonney's federal habeas petition on September 7, 2019, when his motion to proceed in forma pauperis with an original signature was received.  Bonney's original petition was not dated, but was postmarked August 17, 2018.  Rec. Doc. 1-2, p.50.

[34]Rec. Doc. No. 16.

455 U.S. 509, 519–20 (1982)); *Nobles*, 127 F.3d at 419. "A federal habeas petition should be dismissed if state remedies have not been exhausted as to all of the federal court claims." *Whitehead*, 157 F.3d at 387 (citing 28 U.S.C. § 2254(b)(1)(A); *Rose*, 455 U.S. at 519–20).

The well-established test for exhaustion requires that the substance of the federal habeas claim be fairly presented to the highest state court. *Whitehead*, 157 F.3d at 387 (citing *Picard v. Connor*, 404 U.S. 270, 275–78 (1971)). "State prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," including discretionary review when that review is part of the State's ordinary appellate review procedures. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). "A federal court claim must be the 'substantial equivalent' of one presented to the state courts if it is to satisfy the 'fairly presented' requirement." *Whitehead*, 157 F.3d at 387 (citing *Picard*, 404 U.S. at 275–78). "This requirement is not satisfied if the petitioner presents new legal theories or new factual claims in his federal application." *Whitehead*, 157 F.3d at 387 (citing *Nobles*, 127 F.3d at 420); *Wilder v. Cockrell*, 274 F.3d 255, 259 (5th Cir.2001).

For exhaustion purposes, it also is not enough for a petitioner to have raised the claims in the lower state courts if the claims were not specifically presented to the state's highest court, and vice versa. *Baldwin v. Reese*, 541 U.S. 27, 32 (2004). Furthermore, a petitioner does not fairly present a claim to the state's highest court if that court must read beyond the petition or brief, such as a lower court opinion, to find a claim not otherwise specifically raised. *Id*. at 32.

A review of the record shows that Bonney never raised the issue of ineffective assistance of trial or appellate counsel for failing to investigate his alibi or the missing portions of the surveillance video before *any* of the state courts. While he raised a claim related to the violation of his right to confrontation in his application for post-conviction relief, he did not raise the issue in either of his related writ applications to the Louisiana Fourth Circuit or the Louisiana Supreme

Court.  As petitioner did not fairly present claims three and four to each level of the state courts, he has not exhausted those claims.

Normally, the Court would recommend that Bonney's petition be dismissed without prejudice to allow him to pursue exhaustion of his claims in the appropriate state courts.  However, unexhausted claims, those claims which were not "fairly presented" to the state courts, may be considered "technically" exhausted if the habeas petitioner is now prohibited from litigating those claims in the state courts because of some procedural rule.  If that is so, then those "technically" exhausted habeas claims might be considered procedurally defaulted.

If a claim has not been adjudicated on the merits in state court, federal review of that claim may be barred by the doctrine of procedural default if the petitioner has failed to meet state procedural requirements for presenting his federal claims, thereby depriving the state courts of an opportunity to address those claims in the first instance.  *See Cone v. Bell*, 556 U.S. 449, 465, 129 S.Ct. 1769, 1780 (2009) (noting that, "[w]hen a petitioner fails to properly raise his federal claims in state court, he deprives the State of 'an opportunity to address those claims in the first instance' and frustrates the State's ability to honor his constitutional rights") (quoting *Coleman v. Thompson*, 501 U.S. 722, 732 (1991)).  When state court remedies are rendered unavailable by the petitioner's own procedural default, federal courts are normally barred from reviewing those claims.  *See Coleman*, 501 U.S. at 722.  "[I]f the petitioner failed to exhaust state remedies and the court to which petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred, ... [then] there is a procedural default for purposes of federal habeas ..."  *Id.*, at 735 n. 1.

A petitioner has "technically exhausted" his claims if he fails to properly and timely present them to each level of the Louisiana courts and thereafter would be barred from seeking relief in those courts. *Magouirk v. Phillips*, 144 F.3d 348, 358 (5th Cir. 1998) (citing *Coleman*, 501 U.S. at 731–33 and *Sones v. Hargett*, 61 F.3d 410, 416 (5th Cir. 1995)); *Fuller v. Johnson*, 158 F.3d 903, 905–06 (5th Cir. 1998). In such a case, there is no difference between non-exhaustion and procedural default. *Magouirk*, 144 F.3d at 358. Accordingly, when a petitioner fails to exhaust state court remedies because he has allowed his federal claims to lapse, those claims are "technically" procedurally defaulted and may be dismissed. *Id.*

In this case, it is reasonable to conclude that Bonney is now unable to litigate his ineffective assistance of counsel claims or his conformation claim in the Louisiana courts, and that any attempt to litigate this claim would result in dismissal on state procedural grounds. Based on the record, any attempt to litigate his claims now likely would be dismissed as repetitive under La. Code Crim. P. arts. 930.4(D) or (E)[35] or as time-barred by the provisions of La. Code Crim. P. art. 930.8.[36] Therefore, petitioner's claims of ineffective assistance of counsel related to his alibi and the surveillance video and his claim that his right to confrontation was violated are now considered procedurally defaulted. *Sones*, 61 F.3d at 416 (citing *Steele v. Young*, 11 F.3d 1518, 1524 (10th Cir. 1993)). The procedural default doctrine bars federal habeas corpus review if the state courts

---

[35]Art. 930.4(D) provides that "[a] successive application may be dismissed if it fails to raise a new or different claim." Art. 930.4(E) also provides "[a] successive application may be dismissed if it raises a new or different claim that was inexcusably omitted from a prior application."

[36]Art. 930.8 provides a two-year period of limitations for filing applications for post-conviction relief and that period generally runs from the date that the applicant's judgment of conviction becomes final under Louisiana law, which for Bonney was July 10, 2014.

would now refuse to address a habeas petitioner's unexhausted federal claims because litigation of those claims would be barred by state procedural rules.

Federal habeas review of a "technically" exhausted and now procedurally defaulted claim is barred "... unless the prisoner can demonstrate cause for the default and actual prejudice as result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750–51, 111 S.Ct. 2546.

To establish cause for a procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded his efforts to comply with the state's procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). The mere fact that a petitioner or his counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default. *Id.* at 486.

In this case, Bonney has not offered any cause for the default which would excuse the procedural bar. The Court's review of the record does not support a finding that any factor external to the defense prevented Bonney from raising the claims in a procedurally proper manner. The record also does not reflect any action or inaction on the part of the State which prevented him from doing so.

Should Bonney attempt later to argue to a reviewing Court that his appellate counsel was ineffective in failing his confrontation claim on direct appeal, such an argument would be unavailing. Bonney has not exhausted state court review of any such ineffective assistance of counsel claim and therefore cannot rely on such a claim as cause to excuse the bar. *See Edwards*

*v. Carpenter*, 529 U.S. 446, 452-54 (2000) (requiring exhaustion of a claim of ineffective assistance of counsel as cause for procedural default).

"The failure to show 'cause' is fatal to the invocation of the 'cause and prejudice' exception, without regard to whether 'prejudice' is shown." *Hogue v. Johnson*, 131 F.3d 466, 497 (5th Cir. 1997) (citing *Engle*, 456 U.S. at 134 n.43, 102 S.Ct. 1558). Having failed to show an objective cause for his default, the Court need not determine whether prejudice existed, and petitioner has not alleged any actual prejudice. *Ratcliff v. Estelle*, 597 F.2d 474, 477-78 (5th Cir. 1979) (citing *Lumpkin v. Ricketts*, 551 F.2d 680, 681-82 (5th Cir. 1977)).

Bonney's defaulted claims are therefore procedurally barred from review by this federal habeas corpus court. *See Trest v. Whitley*, 94 F.3d 1005, 1008 (5th Cir. 1996) (habeas review precluded where petitioner neglected to allege actual prejudice and cause of failure to comply with state procedural rule concerning time restriction on filing for state post-conviction relief), *vacated on other grounds*, 522 U.S. 87, 118 S.Ct. 478, 139 L.Ed.2d 444 (1998).[37]

Bonney may avoid this procedural bar only when a fundamental miscarriage of justice will occur if the merits of his claims are not reviewed. *Hogue*, 131 F.3d at 497 (citing *Sawyer v. Whitley*, 505 U.S. 333, 339, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992)). To establish a fundamental miscarriage of justice, a petitioner must provide the court with evidence that would support a "colorable showing of factual innocence." *Kuhlmann v. Wilson*, 477 U.S. 436, 454, 106 S.Ct. 2616, 91 L.Ed.2d 364 (1986); *accord Murray*, 477 U.S. at 495-96; *Glover*, 128 F.3d at 902-03. To satisfy the factual innocence standard, petitioner must establish a fair probability that,

---

[37]The Supreme Court vacated the Fifth Circuit's opinion on grounds that a court of appeals is not required to raise the procedural default argument sua sponte but may do so in its discretion. *Id.*

considering all of the evidence now available, the trier of fact would have entertained a reasonable doubt as to the defendant's guilt. *Campos v. Johnson*, 958 F.Supp. 1180, 1195 (W.D. Tex. 1997) (footnote omitted); *Nobles*, 127 F.3d at 423 & n.33 (actual innocence factor requires a showing by clear and convincing evidence that "but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense."). When the petitioner has not adequately asserted his actual innocence, the procedural default cannot be excused under the "fundamental miscarriage of justice" exception. *Glover*, 128 F.3d at 903.

Bonney does not present any evidentiary support, and the record contains nothing, to suggest or establish his actual innocence on the underlying convictions. In other words, he fails to present any evidence or argument of the kind of actual innocence that would excuse the procedural default. He, therefore, has failed to overcome the procedural bar to his claims, and his claims alleging violation of his right to confrontation (claim three) and ineffective assistance of trial and appellate counsel (claim four) should be dismissed with prejudice.

## V.    Standards for a Merits Review

The AEDPA standard of review is governed by § 2254(d) and the Supreme Court's decision in *Williams v. Taylor*, 529 U.S. 362 (2000). It provides different standards for questions of fact, questions of law, and mixed questions of fact and law.

A state court's determinations of questions of fact are presumed correct and the Court must give deference to the state court findings unless they were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(2) (2006); *see Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and

convincing evidence" burden placed on a petitioner who attempts to overcome that presumption. 28 U.S.C. § 2254(e)(1) (2006).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), as amended by the AEDPA.  The standard provides that deference be given to the state court's decision unless the decision is "contrary to or involves an unreasonable application of clearly established federal law" as determined by the United States Supreme Court. *Hill*, 210 F.3d at 485.  The "critical point" in determining the Supreme Court rule to be applied "is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question."  *White v. Woodall*, __ U.S. __, 134 S. Ct. 1697, 1706-07 (2014) (citing *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).  "Thus, 'if a habeas court must extend a rationale before it can apply to the facts at hand,' then by definition the rationale was not 'clearly established at the time of the state-court decision.'"  *White*, 134 S. Ct. at 1706 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 666 (2004)).

A state court's decision can be "contrary to" federal law if: (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law; or (2) the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.  *Williams*, 529 U.S. at 405-06, 412-13; *Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Hill*, 210 F.3d at 485.  A state court's decision can involve an "unreasonable application" of federal law if it correctly identifies the governing rule but then applies it unreasonably to the facts.  *White*, 134 S. Ct. at 1706-07; *Williams*, 529 U.S. at 406-08, 413; *Penry*, 532 U.S. at 792.

The Supreme Court in *Williams* did not specifically define "unreasonable" in the context of decisions involving unreasonable applications of federal law.  *See Williams*, 529 U.S. at 410. The Court, however, noted that an unreasonable application of federal law is different from an incorrect application of federal law.  *Id.*  "'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'"  *Price v. Vincent*, 538 U.S. 634, 641 (2003) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002)) (brackets in original); *Bell v. Cone*, 535 U.S. 685, 699 (2002)).

Thus, under the "unreasonable application" determination, the Court need not determine whether the state court's reasoning is sound, rather "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable."  *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002).  The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner.  *Price*, 538 U.S. at 641 (quoting *Woodford*, 537 U.S. at 24-25); *Wright v. Quarterman*, 470 F.3d 581, 585 (5th Cir. 2006). In addition, review under § 2254(d)(1) is limited to the record before the state court that adjudicated the claim on the merits.  *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## VI.    Insufficient Evidence (Claim No. 1)

Bonney contends that the evidence was insufficient to support his convictions for armed robbery with a firearm and attempted armed robbery.  He argues that the State failed to meet the requirements of La. Rev. Stat. § 14:64.3  In making this claim, Bonney asserts that there was no physical evidence found at the scene such as brass casings or a firearm and that the only means of identifying him was by an anonymous person who said he fit the description.  He further asserts

that there was insufficient evidence that he shot a victim in the foot and demanded money from him while armed with a gun and that the only evidence was the self-serving testimony of the victims.  The State argues that the evidence that was presented at trial was sufficient to establish each element of the crimes and denial of relief by the state courts' was proper under federal law.

While Bonney did not specifically raise the sufficiency of the evidence on direct appeal to the Louisiana Fourth Circuit, the Court resolved that the State provided sufficient evidence to prove beyond a reasonable doubt that Bonney was guilty of armed robbery with a firearm and two counts of attempted armed robbery.  This was the last reasoned decision, because the Louisiana Supreme Court denied Scott's subsequent writ application without stated reasons.  *See Ylst v. Nunnemaker*, 501 U.S. 797, 802 (1991) (when the last state court judgment does not indicate whether it is based on procedural default or the merits of a federal claim, the federal court will presume that the state court has relied upon the same grounds as the last reasoned state court opinion).

Claims of insufficient evidence present a mixed question of law and fact.  *Perez v. Cain*, 529 F.3d 588, 594 (5th Cir. 2008); *Maes v. Thomas*, 46 F.3d 979, 988 (10th Cir. 1995).  The Court must therefore give deference to the state court's findings unless the decision was contrary to, or involved an unreasonable application of Supreme Court law.  *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000).

The appropriate standard for determining the sufficiency of evidence is set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979), which requires a court to determine whether, after viewing the record and the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.  *Jackson*, 443 U.S. at 319; *Perez*, 529 F.3d at 594; *Williams v. Cain*, 408 F. App'x 817, 821 (5th Cir. 2011).  Louisiana law allows for a crime to be proven by both direct and circumstantial evidence.

Under Louisiana law, "[t]he rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence."  La. Rev. Stat. § 15:438.  However, on federal habeas corpus review, the court does not apply this state law, "reasonable hypothesis" standard, and instead must apply the *Jackson* and AEDPA standards of review.  *Gilley v. Collins*, 968 F.2d 465, 468 (5th Cir. 1992) (citing *Schrader v. Whitley*, 904 F.2d 282, 284 (5th Cir. 1990)).

To the extent Bonney relies on Louisiana's circumstantial evidence rule itself, "[t]his is not a purely separate test from the *Jackson* standard to be applied instead of a sufficiency of the evidence test . . .. Ultimately, all evidence, both direct and circumstantial, must be sufficient under *Jackson* to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt."  *State v. Porretto*, 468 So. 2d 1142, 1146 (La. 1985); *accord State v. Williams*, 693 So. 2d 204, 209 (La. App. 4th Cir. 1997). The reasonable hypothesis standard under state law is "just an evidentiary guide for the jury.  If a rational trier of fact reasonably rejects the defendant's hypothesis of innocence, that hypothesis fails." *State v. Maxie*, 614 So. 2d 1318, 1321 (La. App. 3d Cir. 1993); *accord Williams*, 693 So. 2d at 209. The appropriate standard for this Court on habeas review remains *Jackson*.

The Court's consideration of the sufficiency of the evidence extends only to what was presented at trial.  *See McDaniel v. Brown*, 558 U.S. 120, 131, 134 (2010) (recognizing that a reviewing court is to consider all of the trial evidence as a whole under *Jackson*); *Johnson v. Cain*, 347 F. App'x 89, 91 (5th Cir. 2009) (quoting *Jackson*, 443 U.S. at 324) (*Jackson* standard relies "upon the record evidence adduced at the trial.").  The review of the sufficiency of the evidence, however, does not include review of the weight of the evidence or the credibility of the witnesses, because those determinations are the exclusive province of the jury.  *United States v. Young*, 107 F. App'x 442, 443 (5th Cir. 2004) (per curiam) (citing *United States v. Garcia*, 995 F.2d 556, 561 (5th Cir. 1993)); *see also Jackson*, 443 U.S. at 319 (noting that it is the jury's responsibility "to resolve conflicts in the

testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts"). A reviewing federal habeas court, therefore, is not authorized to substitute its interpretation of the evidence or its view of the credibility of witnesses for that of the fact-finder. *Weeks v. Scott*, 55 F.3d 1059, 1062 (1995) (citing *Alexander v. McCotter*, 775 F.2d 595, 598 (5th Cir. 1985)). All credibility choices and conflicting inferences must be resolved in favor of the verdict. *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir. 2005).

In addition, "[t]he *Jackson* inquiry 'does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit.'" *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001) (quoting *Herrera v. Collins*, 506 U.S. 390, 402 (1993)). Thus, to determine whether the commission of a crime is adequately supported by the record, the court must review the substantive elements of the crime as defined by state law. *Perez*, 529 F.3d at 594 (citing *Jackson*, 443 U.S. at 324 n.16).

Bonney was charged with and convicted of armed robbery with a firearm. While he was also charged with attempted armed robbery with a firearm, he was convicted of attempted armed robbery.

Armed robbery is defined as "the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon." La. Rev. Stat. § 14:64(A); *State v. Thomas*, 13 So. 3d 603, 606 (La. App. 5th Cir. 2009). La. Rev. Stat. § 14.64.3, armed robbery with a firearm, requires the additional element that the dangerous weapon used was a firearm. *Bias v. Vannoy*, 6:17-CV-1016, 2018 WL 2372658, * 6 (W.D. La. May 8, 2018), *adopted*, 2018 WL 243 WL 2437001 (W.D. La. May 30, 2018); *State v. Fuller*, 980 So.2d 45, 53 (La. App. 5th Cir. 2008) (citing *State v. Walker*, 789 So.2d 86, 91 (La. App. 5th Cir. 2001)).

To convict Bonney of armed robbery with a firearm, the state was required to prove beyond a reasonable doubt all elements of the statute. *State v. Joseph*, 71 So. 3d 549, 553-54 (La. App. 4th Cir.

2011).  Attempted armed robbery is the specific intent to take something of value from another person or in his control by use of force or intimidation while armed with a dangerous weapon; and the perpetrator does or omits an act for the purpose of and tending directly toward the robbery.  La. Rev. Stat. § 14:27; *State v. Johnson*, 466 So.2d 741, 744 (La. App. 4th Cir. 1985).

Bonney contests the sufficiency of the evidence to prove the use of a firearm, the demand of money as well as his identification as a perpetrator of the crimes.  He argues that no firearm was ever located.  He further argues that there was a "discrepancy" in the testimony of the victims and he was only identified by an anonymous source.[38]

It is not necessary to produce a weapon to support an armed robbery conviction "where the state's witnesses can establish, through their observations at the crime scene, all the elements of the charge beyond a reasonable doubt, including the existence and use of a dangerous weapon." *State v. Cotton*, 646 So.2d 1144, 1146 (La. App. 5th Cir. 11/16/94) (citation omitted); *accord State v. Brown*, 591 So.2d 791, 794 (La. App. 5th Cir.1991).  It is also unnecessary to produce the stolen items to support an armed robbery conviction.  *State v. Glover*, 754 So.2d 1044, 1048 (La.App. 1st Cir.1999); *see State v. Wickem*, 759 So.2d at 961, 968  (La. App. 5th Cir. 2000) ("It is settled that the production of a weapon or other physical evidence is not required as long as the state can establish all of the elements of armed robbery beyond a reasonable doubt through the testimony of its witnesses").

Under Louisiana law, in addition to proving the statutory elements of the charged offense at trial, the State is required to prove a defendant's identity as a perpetrator.  *State v. Draughn*, 950 So. 2d 583, 593 (La.), *cert. denied*, 552 U.S. 1012 (2007); *State v. Thomas*, 192 So. 3d 291, 303 (La. App.

---

[38]Rec Doc. 4, p. 5.

5th Cir. 2016); *State v. Ingram*, 888 So. 2d 923, 926 (La. App. 5th Cir. 2004). Where the key issue is identification, the State is required to negate any reasonable probability of misidentification. Id. However, a positive identification by only one witness is sufficient to support a conviction. *State v. Williams*, 3 So. 3d 526, 529 (La. App. 5th Cir. 2008). A positive identification by a victim, as well as the victim's testimony alone, also is sufficient identification evidence regarding the crime committed against that victim. *Holderfield v. Jones*, 903 F. Supp. 1011, 1017 (E.D. La. 1995) (citing *State v. Turner*, 591 So. 2d 391 (La. App. 2d Cir. 1991)). Discrepancies in witness testimony go to credibility, which is a matter left to the judgment of the trier of fact, and an appellate court cannot reassess a credibility determination. *State v. Thomas*, 13 So. 3d 603, 607 (La. App. 5th Cir. 2008).

At trial in Bonney's case, the jury heard testimony from three of the victims. Jose Obando–Brizuela testified that he was waiting with three co-workers when they saw two African American men get exit a vehicle and approach them.[39] Obando–Brizuela explained that one of the men was tall and had long braided hair, was carrying a gun, pointed it at them, and asked them for their money.[40] Obando-Brizuela showed the man that his wallet was empty.[41] Obando–Brizuela recalled that Flores gave the man money and the man pointed the gun at Flores and pulled the trigger, but the gun jammed.[42] Eventually the gun fired and Perez–Rodriguez was struck.[43] The shooter continued to point the gun at the victims while running to his car while the second man took off on foot.[44] Obando–Brizuela's

---

[39]St. Rec. Vol. 3 of 4, Trial Transcript, pp. 145-46, 156, 3/14-15/11.

[40]*Id*., at pp. 146-47, 156, 166.

[41]*Id*., at p. 148.

[42]*Id.*

[43]*Id*., at p. 149.

[44]*Id*, at pp. 150, 158.

boss Harold Ruiz arrived and called the police.[45]   The police brought a shorter man with medium dreadlocks to the scene who Perez–Rodriguez identified as the second perpetrator.[46]   Obando–Brizuela made an in-court identified of Bonney and testified that he was the perpetrator with the gun.[47]

Milton Rumirez testified that he and his three co-workers had finished work and were waiting for Harold Ruiz to pick them up when a tall man with long braided hair and a teardrop tattoo got out of a car and approached pointing a gun at them.[48]   A second man who was shorter, heavier and had shorter braided hair came, from the side of the house.[49]   Rumirez made an in-court identification of Bonney as the perpetrator with the gun, but explained that Bonney's appearance had changed as his hair was short at the time of trial.[50]   Rumirez explained that when Bonney asked for their money, Flores gave him seven dollars and then Bonney shot Perez–Rodriguez.[51]   Bonney fled to his car while his accomplice retrieved the bullet casing and then ran behind the house.[52]

Elvis Ruiz testified that he and his three co-workers were waiting for his brother Harold Ruiz to pick them up when a tall man with long braided hair and a tear drop tattoo on his face parked his car and approached them carrying a firearm.[53]   The perpetrator pointed the firearm at them and asked them

---

[45]*Id.*, at p. 150.

[46]*Id.*, at p. 151, 157.

[47]*Id.*, at p. 152.

[48]*Id.*, at pp. 172-73, 177-80, 184.

[49]*Id.*, at pp. 173, 178.

[50]*Id.*, at pp. 174, 177.

[51]*Id.*, at pp. 174, 182.

[52]*Id.*, at pp. 176, 181.

[53]*Id.*, at pp. 189-90

for their money and Ruiz gave him some.[54]  Ruiz testified that his co-workers showed their wallets to prove that they did not have any money. [55]  Ruiz testified that the perpetrator tried to shoot him, but the gun jammed.[56]  According to Ruiz, the man, who Ruiz identified in court as Bonney, fiddled with the gun, shot Perez-Rodriguez, and then fled to his car.[57]  Ruiz recalled that a second man picked up the gun casing and ran towards the back of the house.[58]

Detective Aaron Wiltz testified that he responded to the scene and observed that Perez–Rodriguez had been shot in the foot.[59]  Through his investigation, Wiltz learned that Perez–Rodriguez had been sitting on the steps of a home when he was approached by two black males, one tall with medium complexion and shoulder length dreadlocks and the other shorter with dark complexion and medium length dreadlocks.[60]  The taller man had a firearm and demanded money and when Perez–Rodriguez tried to tell him he did not have any money, he shot him in the foot.[61]  After the shooting, the shorter man picked up the shell casing and both perpetrators fled the scene.[62]  Another police unit apprehended Picard and brought him to the scene where Perez–Rodriguez identified him as the shorter man.[63]

---

[54]*Id.*

[55]*Id.*, at p. 190.

[56]*Id.*, at p. 191.

[57]*Id.*

[58]*Id.*, at p. 192.

[59]*Id.*, at pp. 76-77.

[60]*Id.*, at pp. 79, 86, 89.

[61]*Id.*, at p. 79.

[62]*Id.*

[63]*Id.*, at pp. 81-82.

After a neighborhood canvas, Wiltz obtained Bonney's name and description as a possible suspect.[64] Wilz compiled a six-person photographic line up and brought it to the hospital where Perez–Rodriguez identified Bonney as the shooter.[65] Wiltz identified Bonney in court although he testified that Bonney had changed cut his hair.[66]

Officer John Carwile testified he heard the description of the suspects and drove to a nearby bus stop where he located a man fitting on of the descriptions.[67] He brought the suspect to the scene and Perez–Rodriguez identified him as the person who picked up the shell casing.[68]

Thus, the evidence before the jury was sufficient to establish that Bonney was the person with the gun who took money from Ruiz and attempted to take money from Obando–Brizuela and Flores. *Holderfield*, 903 F. Supp. at 1017 (a victim's positive identification constitutes sufficient identification evidence); *Preacher v. Estelle*, 626 F.2d 1222, 1225 (5th Cir. 1980) (identification evidence sufficient where victim, who never identified anyone else as the perpetrator, positively identified defendant at the trial, gave the basis upon which she made the identification, and was subject to cross-examination).

The jury obviously found the testimony, including that of the victims, to be credible. *Jackson* limits this Court's review to the evidence before the trier of fact and does not allow the Court to reassess the weight and credibility of the evidence. *See Jackson*, 443 U.S. at 319 (finding that such matters are left to the factfinder). Specifically, the determination of the credibility of a witness is within the province of the jury and is not to be disturbed on habeas review. *Passman v. Blackburn*, 652 F.2d 559,

---

[64]*Id.*, at p. 84.
[65]*Id.*, at pp. 83-84, 92.

[66]*Id.*, at p. 84.

[67]*Id.*, at pp. 95, 113.

[68]*Id.*, at pp. 95-97, 102, 105. 113-14.

569 (5th Cir. 1981) (that the jury chose to believe a witness whose credibility was challenged is not a question of constitutional dimensions); *Holderfield*, 903 F. Supp. at 1018 (citing *United States v. Hatch*, 926 F.2d 387, 399 (5th Cir. 1991)) (The habeas court should defer to the jury's resolution of credibility determinations and justifiable inferences of fact.). The jury's resolve was reasonable and supported by the evidence and testimony.

For these reasons, Bonney has failed to establish that the verdicts were contrary to the law and evidence or that there was insufficient evidence under the *Jackson* standard to support the verdicts against him. The state courts' denial of relief on this issue was not contrary to, or an unreasonable application of, Supreme Court law. Bonney is not entitled to relief on this claim.

## VII.   Interpreter Misuse (Claim No. 2)

Bonney claims that that the Trial Court failed to hold a hearing to determine whether the interpreter, America Iglesius, was a qualified interpreter. He also claims that the Trial Court erred in allowing the interpreter "to assist the State's Prosecuting Attorney in leaving the Court area and going out and retrieving witnesses to be brought forth into the Court for testimony purposes."[69] He further claims that the interpreter was permitted to leave the courtroom and consult with the prosecutor and the witnesses before re-entering the courtroom. Bonney asserts that his counsel should have moved for a mistrial based on the interpreter's performance of the duties of a bailiff. The State claims that Bonney's claim is not cognizable because he failed to show a clear violation of the Sixth Amendment.

The Trial Court rejected Bonney's arguments when he raised them in his application for post-conviction relief, finding Bonney "failed to claim any specific prejudice arising out of the

---

[69]Rec. Doc. 4, p. 5.

interpreter's alleged actions of translations during the trial.  Further, Petitioner fails to show that the interpreter was not a neutral and impartial party."[70]  The Louisiana Supreme Court found that Bonney failed to satisfy his post-conviction burden of proof, citing La. Code Crim. P. 930.2.[71]

Initially, Louisiana law does not require an interpreter to be formally certified or qualified unless the accused is accused is deaf or severely hearing-impaired.  *State v. Ramirez*, 154 So. 2d 636, 643 (La. App. 4th Cir. 2014) (citing *State v. Santos*, 40 So.3d 167, 173 (La. App. 5th Cir. 2010)).  As Bonney is neither deaf nor hearing-impaired, he was not entitled to a certified interpreter to interpret for the Spanish speaking witnesses.

Further, a federal habeas court does not sit to correct errors made by state courts in interpreting and applying state law.  *Swarthout v. Cooke*, 526 U.S. 216,  131 S. Ct. 859, 861 (2011) (federal habeas review does not lie for errors of state law); *Narvaiz v. Johnson*, 134 F.3d 688, 695 (5th Cir. 1998) (citing *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991), *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990), and *West v. Johnson*, 92 F.3d 1385, 1404 (5th Cir. 1996)).  "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."  *Estelle*, 502 U.S. at 67-68; *see also*, *Molo v. Johnson*, 207 F.3d 773, 776 n.9 (5th Cir. 2000) ("Federal habeas review does not extend to state court conclusions of state law."); *Hogue v. Johnson*, 131 F.3d 466, 506 (1997) (a disagreement as to state law is not cognizable on federal habeas review). The state courts' application and interpretation of Louisiana law regarding appointment and use of an interpreter are not bases for federal habeas corpus relief.

---

[70]St. Rec. Vol. 1 f 4, Trial Court Judgment, pp. 1 -2, 12/17/15; Application for Post-Conviction Relief, 1/14/15.

[71]*State ex rel. Bonney v. State*, 242 So.3d 563 (La. 2018) (per curiam); St. Rec. Vol. 4 of 4, La. S Ct. Order, 17-KH-0192, 4/27/18.

Instead, federal habeas courts sit only to address violations of constitutional magnitude, including due process violations that render the criminal proceedings fundamentally unfair. *Lisenba v. People of the St. of Cal.*, 314 U.S. 219, 236-37 (1941); *Peters v. Whitley*, 942 F.2d 937, 940 (5th Cir. 1991) (habeas corpus review is proper only to determine whether a state trial judge's error is so extreme as "to render the trial fundamentally unfair or violate an explicit constitutional right.")  In that regard, the Supreme Court long ago held that the appointment of an interpreter "is a matter largely resting in the discretion of the trial court."  *Perovich v. United States*, 205 U.S. 86, 91 (1907); *accord United States v. Johnson*, 248 F.3d 655, 663 (7th Cir. 2001); *Suarez v. United States*, 309 F.2d 709, 712 (5th Cir. 1962).

In this case, Bonney has failed to make a specific showing that Iglesius was not qualified to interpret in his case.  Bonney has pointed to no prejudice to him during the trial in this matter. There is no evidence that the witnesses did not understand Iglesius nor any evidence that she misinterpreted the questions from counsel or the responses from the witnesses.  Further, there is simply no indication in the trial transcript that the interpreter ever left the courtroom to retrieve the witnesses or that she and the prosecutor conferred with the witnesses before they took the stand. Even assuming Iglesius notified the witnesses that it was their turn to testify and escorted them into the courtroom, Bonney has not demonstrated how such actions prejudiced his trial.

Bonney has not shown that his trial was rendered fundamentally unfair under due process standards by the state court's failure to place Iglesius's credentials on the record or by Iglesius's services as an interpreter or bailiff.  The state courts' denial of relief on this issue was not contrary to Supreme Court law.  Bonney is not entitled to relief as to this claim.

As previously indicated, included in claim two is Bonney's assertion that his counsel should have moved for a mistrial pursuant to La. Code Crim. P. arts. 770 or 771 based upon the interpreter's actions. While Bonney included this assertion in his submissions to the state courts, it was not addressed by any of the courts. In an abundance of caution, the Court construes this allegation as a claim of ineffective assistance of counsel.

The issue of ineffective assistance of counsel is a mixed question of law and fact. *Clark v. Thaler*, 673 F.3d 410, 416 (5th Cir. 2012); *Woodfox v. Cain*, 609 F.3d 774, 789 (5th Cir. 2010). In *Strickland v. Washington, 466 U.S. 668 (1984)*, the Court established a two-part test for evaluating claims of ineffective assistance of counsel in which the petitioner must prove deficient performance and prejudice therefrom. *Strickland*, 466 U.S. at 687. The petitioner has the burden of proving ineffective assistance of counsel by a preponderance of the evidence. *Montoya v. Johnson*, 226 F.3d 399, 408 (5th Cir. 2000); *Jernigan v. Collins*, 980 F.2d 292, 296 (1992). In deciding ineffective assistance claims, a court need not address both prongs of the conjunctive *Strickland* standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test. *Amos v. Scott*, 61 F.3d 333, 348 (1995).

To prevail on the deficiency prong, a petitioner must demonstrate that counsel's conduct failed to meet the constitutional minimum guaranteed by the Sixth Amendment. *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001). "The defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687-88. The analysis of counsel's performance must take into account the reasonableness of counsel's actions under prevailing professional norms and in light of all of the circumstances. *See Strickland*, 466 U.S. at 689; *Carty v. Thaler*, 583 F.3d 244, 258 (5th Cir. 2009). The reviewing court must "judge . . . counsel's challenged conduct on the facts of the particular case, viewed as of the time

of counsel's conduct." *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (quoting *Strickland*, 466 U.S. at 690). Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. *Harrington*, 562 U.S. at 104 (citing *Strickland*, 466 U.S. at 689). "[I]t is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight." *Bell*, 535 U.S. at 702 (citing *Strickland*, 466 U.S. at 689). As a result, federal habeas courts presume that trial strategy is objectively reasonable unless clearly proven otherwise. *Strickland*, 466 U.S. at 689; *Johnson v. Dretke*, 394 F.3d 332, 337 (5th Cir. 2004) (counsel's "'conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness.'") (quoting *United States v. Jones*, 287 F.3d 325, 331 (5th Cir. 2002)); *Geiger v. Cain*, 540 F.3d 303, 309 (5th Cir. 2008).

In order to prove prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Williams v. Thaler*, 602 F.3d 291, 310 (5th Cir. 2010). Furthermore, "[t]he petitioner must 'affirmatively prove,' and not just allege, prejudice." *Day v. Quarterman*, 566 F.3d 527, 536 (5th Cir. 2009) (quoting *Strickland*, 466 U.S. at 695). In this context, "a reasonable probability is a probability sufficient to undermine confidence in the outcome." *Cullen*, 563 U.S. at 189 (quoting *Strickland*, 466 U.S. at. 694). This standard requires a "substantial," not just "conceivable," likelihood of a different result. *Harrington*, 562 U.S. at 112. In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." *Crockett v. McCotter*, 796 F.2d 787, 793 (5th Cir. 1986). Thus, conclusory allegations of ineffective assistance of counsel, with no showing of effect on the proceedings, do not raise a

constitutional issue sufficient to support federal habeas relief. *Miller*, 200 F.3d at 282 (citing *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983)).

On habeas review, the United States Supreme Court has clarified that, in applying *Strickland*, "[t]he question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington*, 562 U.S. at 105 (citing *Strickland*, 466 U.S. at 690. This Court must apply the "strong presumption" that counsel's strategy and defense tactics fall "within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 690; *Moore v. Johnson*, 194 F.3d 586, 591 (5th Cir. 1999).

Federal habeas courts presume that trial strategy is objectively reasonable unless clearly proven otherwise by the petitioner. *Strickland*, 466 U.S. at 689; *Geiger v. Cain*, 540 F.3d 303, 309 (5th Cir. 2008); *Moore*, 194 F.3d at 591. In assessing counsel's performance, a federal habeas court must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time of trial. *Strickland*, 466 U.S. at 689; *Neal*, 286 F.3d at 236–37; *Clark v. Johnson*, 227 F.3d 273, 282–83 (5th Cir. 2000). Tactical decisions when supported by the circumstances are objectively reasonable and do not amount to unconstitutionally deficient performance. *Lamb v. Johnson*, 179 F.3d 352, 358 (5th Cir. 1999) (citing *Rector v. Johnson*, 120 F.3d 551, 564 (5th Cir. 1997) and *Mann v. Scott*, 41 F.3d 968, 983–84 (5th Cir. 1994)).

In the instant case, Bonney fails to establish that his counsel's performance was objectively unreasonable or deficient under the circumstances of his case or that there is a reasonable probability that, but for his counsel's failure to move for a mistrial, the result of the proceedings would have been different.

Under Louisiana law, a mistrial is available when a remark or comment falls directly or indirectly into one of four categories: "(1) Race, religion, color or national origin, if the remark or comment is not material and relevant and might create prejudice against the defendant in the mind of the jury; (2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible; (3) The failure of the defendant to testify in his own defense; or (4) The refusal of the judge to direct a verdict." La. Code Crim. P. art. 770. When a witness's remark or comment falls outside of these categories, the State or the defense may request that the court admonish the jury to disregard an irrelevant, immaterial, or potentially prejudicial remark. La. Code Crim. P. art. 771. In the latter case, a mistrial may be granted only if the court is satisfied that an admonition is insufficient to assure a fair trial. *Id*.

In this case, the conduct of which Bonney complains does not fall within the enumerated bases for a mistrial and did not compel a request a motion for mistrial by Bonney's counsel. Counsel was not deficient in failing to move for a mistrial when Louisiana law relied upon by Bonney did not support such a motion. *See Smith*, 907 F.2d at 585 n.6; *Koch*, 907 F.2d at 530. Bonney is not entitled to federal habeas corpus relief on this claim.

## VIII.  Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Bonney's petition for the issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from

attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[72]

New Orleans, Louisiana, this 6th day of June, 2019.

_____
**KAREN WELLS ROBY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

---

[72]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.